E-FILED
Thursday, 19 September, 2019  06:06:06 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

DEBBIE LAMPERT,

    Plaintiff,

v.

WELTMAN, WEINBERG & REIS CO., LPA,

    Defendant.

Case No.: 1:18-cv-01223-JES-JEH

Honorable James E. Shadid

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR
## SUMMARY JUDGMENT

**NOW COMES** Plaintiff, DEBBIE LAMPERT ("Plaintiff"), by and through her undersigned counsel, responding to WELTMAN, WEINBERG & REIS CO., LPA's ("Weltman") Motion for Summary Judgment ("Weltman's Motion") as follows:

### I.    INTRODUCTION

Weltman's Motion seeks to dispose of this case in its entirety by seeking summary judgment in its favor with respect to Plaintiff's claims pursuant to the Fair Debt Collection Practices Act ("FDCPA"). Plaintiff brought claims against Weltman for violations of §1692g(b) of the FDCPA. Plaintiff alleges that Weltman violated §1692g(b) of the FDCPA by failing to cease collection activity on an alleged Discover Bank debt after Plaintiff requested verification of the debt. Specifically, Weltman, on behalf of Discover Bank, failed to verify the debt as required by the FDCPA and instead filed a collection lawsuit seeking to collect the debt. Weltman's conduct violates the black letter of the FDCPA.

Weltman's Motion demonstrates its miscomprehension of the legal standard at summary judgment. Instead of acknowledging the presence of disputed material facts, which precludes summary judgment, Weltman asks the Court to adjudicate disputed facts in its favor. Simply put,

whether Weltman received Plaintiff's dispute and request for verification is a question of fact that precludes summary judgment as a matter of law. Similarly, Weltman's bona fide error defense is replete with factual questions that cannot be decided at the summary judgment stage. For the reasons stated below, Weltman's Motion must be denied as a matter of law.

## II. RESPONSE TO UNDISPUTED MATERIAL FACTS

### A. Undisputed Material Facts

1.      Plaintiff incurred a financial obligation to Discover Bank. (Affidavit of Casey Hicks ¶ 27 attached hereto as Exhibit 1; Account Statement attached hereto as Exhibit 2).

2.      Plaintiff defaulted on that financial obligation and, on November 3, 2017, Discover Bank placed the account balance owed of $5,553.04 with Weltman for collection of the past due amount. (Ex. 1, ¶ 27). The account statement showing the balance of $5,553.04. (Ex. 2)

3.      On November 22, 2017, Weltman sent Plaintiff an initial collection letter seeking to collect the debt owed to Discover Bank. (Ex. 1, ¶ 28).

4.      Plaintiff alleges that on November 27, 2017, she mailed Weltman a letter to dispute the validity of the debt and to seek verification of the debt. (Defendant's Answer to Plaintiff's Complaint, ¶ 22, attached hereto as Exhibit 3).

5.      On February 2, 2018, Weltman filed a collection lawsuit in the Circuit Court of the 10th Judicial Circuit, Tazewell County, Illinois captioned as *Discover Bank v. Debbie H. Lampert*, 2018 SC 137 (the "collection lawsuit"). (Ex. 1, ¶ 29; State Court Lawsuit Complaint, attached hereto as Exhibit 4).

6.      The collection lawsuit stated that the amount due and owing was the sum of $5,553.04 and attached a copy of the Discover Card Account Summary showing the same amount owed. (Ex. 4).

2

**7.**     Between November 22, 2017 when Weltman sent an initial collection letter to Plaintiff and February 2, 2018 when Weltman filed a collection lawsuit on behalf of Discover Bank, Weltman did not send correspondence to Plaintiff with verification of her debt. (Ex. 1 ¶ 30).

**9.**     Plaintiff claims that on December 1, 2017 at 11:04AM, she faxed a three page document to Weltman's fax number of (216) 363-4121 from Plaintiff's fax number of (309) 966-1939. (Plaintiff's Deposition Transcript, p. 38, lines 23-24 – p. 39, lines 1-9; p. 40, lines 7-11; p. 53, lines 5-10, attached hereto as Exhibit 5). Plaintiff has produced an alleged fax confirmation transmission page and an unsigned two page letter addressed to Weltman. The alleged fax transmission page and the two page letter are attached as Exhibit 6.

**11.**     Weltman maintains a Regular Consumer Mail Policy as part of its standard operating procedures which applies to all written correspondence received by Weltman's Office Operations Department. (Ex. 1, ¶ 8; Regular Consumer Mail Policy, filed under seal as Exhibit 8).

**18**.     Weltman maintains a Clean Desk Policy which applies to all Weltman employees. (Ex. 1, ¶ 15; Clean Desk Policy, filed under seal as Exhibit 10).

**26**.     Once an account is placed in a dispute status, Weltman's CCS team reviews the supporting documentation and works with the Client Media Department to address and document the dispute. (Ex. 1, ¶ 22; Ex. 11).

**27**.     Once an account is placed into a dispute status on Weltman's system, it will remain in the dispute status while the dispute is investigated. This has the effect of placing the account in a temporary cease status to prevent any further collection or legal efforts until verification has been provided to the consumer. (Ex. 1, ¶ 22; Ex. 11)

**28**.     The Client Media Department will work with Weltman's client to obtain necessary

information documentation about the debt for verification. (Ex. 1, ¶ 24; Ex. 11).

**30**.    If Weltman already possesses the necessary documentation about the debt, the documentation verifying the debt is mailed to the consumer or the consumer's authorized representative. (Ex. 1, ¶ 24; Ex. 11). Weltman will update the account history notes to include the date the letter with the verifying documentation was mailed to the consumer along with a description of the supporting documentation. (Ex. 1, ¶ 24; Ex. 11).

**31**.    If Weltman doesn't have verification documentation in its possession, the CCS team will task the Client Media Department to place a request for documents to the creditor client and change the account status for a follow up discussion with Weltman's client. (Ex. 1, ¶ 25; Ex. 11).

**32**.    If Weltman is unable to obtain verification documentation from the creditor client, the CCS team may close the account and send the consumer a letter advising them that documentation is unavailable and that the account is being returned to the creditor client. (Ex. 1, ¶ 25; Ex. 11).

**34**.    Weltman performs annual and quarterly reviews of its dispute handling procedure and process to ensure the system codes are properly working. In addition, the client audit team receives a weekly report that includes a list of all accounts moved out of a verification, dispute or fraud status to another "non-disputed status" code. This report shows all accounts that were in one of these protected statuses and then moved to another status because the verification/dispute/fraud issue has been resolved for a variety of reasons. Weltman reviews and audits this report every week for compliance and quality control issues. (Ex. 1, ¶ 27; Ex. 11).

**B. Disputed Material Facts**

**8**.    Weltman did not send correspondence to Plaintiff with verification of her debt because Weltman has no record of receiving any verification request from Plaintiff. (Ex. 1 ¶ 31).

**Basis for Dispute**: Although Weltman has no record of receiving Plaintiff's dispute and request for verification, Plaintiff did in fact send a dispute and request for verification to Weltman via fax to Weltman's fax number. (Ex. 6; Ex. 5 at 38:18-40:11; 41:23-42:7; 43:4-46:19). Plaintiff received a fax confirmation indicating that Plaintiff's fax was successfully delivered to Weltman's fax number (216) 363-4121. (Ex. 6; Ex. 5, 38:18-40:11; 41:23-42:7; 43:4-46:19). Specifically, the fax confirmation sheet displays that the "Result" was "OK", thus signifying that it was successfully transmitted and delivered. (Ex. 6; Ex. 5 at 38:18-40:11; 41:23-42:7; 43:4-46:19). Accordingly, the reason that Weltman did not verify the debt is not because it did not receive Plaintiff's request for verification.

10.    AT&T, Weltman's telephone and fax service provider, responded to Plaintiff's third party subpoena to produce all call details (incoming and outgoing) related to fax number (216) 363- 4121 from November 1, 2017 through December 31, 2017. The AT&T's records do not show that Weltman received any call from Plaintiff's fax number on December 1, 2017 at 11:04AM. The AT&T records obtained by subpoena are attached as Exhibit 7.

**Basis for Dispute:** According to the fax confirmation sheet, Plaintiff sent the fax to Weltman's fax number (216) 363-4121 on December 1, 2017 at 11:04 a.m. and the fax took 1 minute and 31 seconds to transmit. (Ex. 6).  At 11:06 a.m., Plaintiff received confirmation that the fax was successfully delivered to Weltman's fax number (216) 363-4121. (Ex. 6; Ex. 5, at 53:17-19). AT&T's records indicate that Weltman received a total of three faxes at 16:06 Coordinated Universal Time (UTC), which is expressed in military time. (Ex. 7, at Lampert 000012 and Lampert 000028). The 16:06 UTC reflected on AT&T's records converts to 11:06 a.m. Central Standard Time (CST), the precise time Plaintiff's fax machine issued the fax confirmation sheet. (Ex. 6, Ex. 7, at Lampert 000012 and Lampert 000028). Accordingly, AT&T's records and the fax

5

confirmation sheet demonstrate that Plaintiff's fax was successfully delivered to Weltman. (Ex. 6; Ex. 7, at Lampert 000012 and Lampert 000028).

12.    Weltman's Office Operations Department ("OPS department") receives and processes all written correspondence that is received by Weltman via USPS mail, courier, and fax. (Ex. 1, ¶ 9; Ex. 8).

**Basis for Dispute:** Weltman's OAP department does not process all written correspondences received by fax as demonstrated by Weltman's OAP's department's failure to process and respond to Plaintiff's dispute and request for verification. As set forth above, there is evidence establishing that Plaintiff's fax was successfully delivered to Weltman. (Ex. 6; Ex. 7, at Lampert 000012 and Lampert 000028). There is no dispute that  Weltman "did not send correspondence to Plaintiff with verification of her debt." (Ex. 1, ¶33). Accordingly, Weltman's contention is refuted by the evidence.

13.    Upon receipt of any correspondence, Weltman uses any identifying information in the communication to locate the account to which it relates in Weltman's system, identifies the account for the appropriate department and provides notification to the designated collection employee that correspondence for an account has been received. (Ex. 1, ¶ 10; Ex. 8).

**Basis for Dispute:** Weltman received Plaintiff's dispute and request for verification on December 1, 2017. (Ex. 6; Ex. 5, 39:5-8; 45:17-19; 46:17-19; Ex. 7, at Lampert 000012 and Lampert 000028). Despite receiving Plaintiff's dispute and request for verification via fax, Weltman did not provide notification to a designated collection employee. Specifically, Weltman's account history notes for Plaintiff's account does not reflect such activity. (Plaintiff's Ex. A).

14.    The account history notes and status are updated based upon the type of document received. The appropriate account history fields are specifically updated when the

6

communication indicates any of the following: a consumer is represented by an attorney, a request for verification of debt, a dispute the debt, a request to cease communications, a claim of identity theft, a claim of hardship, notice that the consumer is incarcerated, a claim of a disability or a notice that the consumer filed for bankruptcy. (Ex. 1, ¶ 11; Ex. 8).

**Basis for Dispute:** Weltman received Plaintiff's dispute and request for verification on December 1, 2017. (Ex. 6; Ex. 5, 39:5-8; 45:17-19; 46:17-19; Ex. 7, at Lampert 000012 and Lampert 000028). Despite receiving Plaintiff's dispute and request for verification, Weltman's account history notes do not reflect that any fields were updated to reflect Plaintiff's dispute and request for verification. (Plaintiff's Ex. A).

**15.** If correspondence received by Weltman indicates that a consumer claims Weltman is violating any regulation or that a consumer is filing a formal complaint, Weltman's personnel that work on processing disputes are notified of that correspondence. (Ex. 1, ¶ 12; Ex. 8).

**Basis for Dispute:** Weltman received Plaintiff's dispute and request for verification on December 1, 2017. (Ex. 6; Ex. 5, 39:5-8; 45:17-19; 46:17-19; Ex. 7, at Lampert 000012 and Lampert 000028). Plaintiff's dispute and request for verification expressly stated that Weltman was in violation of the FDCPA and threatened the filing of a complaint to the Federal Trade Commission and the Illinois Attorney General's Office. Weltman's account history notes do not reflect that Weltman personnel were notified of Plaintiff's correspondence. (Plaintiff's Ex. A).

**16**. Weltman scans paper documents into electronic document files and saves those electronic documents with an appropriate code in Weltman's document management system for the account that relates to the scanned documents. (Ex. 1, ¶ 13; Ex. 8).

**Basis for Dispute:** Weltman received Plaintiff's dispute and request for verification on December 1, 2017. (Ex. 6; Ex. 5, 38:18-40:11; 41:23-42:7; 43:4-46:19; Ex. 7, at Lampert 000012

and Lampert 000028). Weltman's account history notes do not reflect that Plaintiff's dispute and request for verification was scanned into electronic document files and coded properly. (Plaintiff's Ex. A).

17.   All written communications received by Weltman are scanned before the correspondence is processed by the OPS department. (Ex. 8). The OPS department employees ensure the documents are scanned properly and completely prior to saving the file to the document management system and disposing of any hard copies pursuant to Weltman's Record Retention and Destruction Policy. (Ex. 1, ¶ 14; Ex. 8; Record Retention and Destruction Policy, filed under seal as Exhibit 9).

**Basis for Dispute:** Weltman received Plaintiff's dispute and request for verification on December 1, 2017. (Ex. 6; Ex. 5, 38:18-40:11; 41:23-42:7; 43:4-46:19, Ex. 7, at Lampert 000012 and Lampert 000028). Weltman's account history notes do not reflect that Plaintiff's dispute and request for verification was scanned and processed by the OPS department. (Plaintiff's Ex. A).

19.   Pursuant to the Clean Desk Policy Weltman's Management Team Members are required to ensure all fax machines located in their department are cleared of documents and any documents relating to a consumer account are forwarded to the appropriate departments for processing. Management Team Members conduct routine audits to ensure the Clean Desk Policy is being followed. (Ex. 1, ¶ 16; Ex. 10).

**Basis for Dispute:** This contention is not supported by the cited material. Specifically, Weltman's written Clean Desk Policy does not require Weltman employees to forward any documents relating to a consumer account to the appropriate departments for processing. (Ex. 10).

20.   Had Weltman received a written communication from Plaintiff requesting verification of the debt, Weltman would have followed its policies and procedures regarding

processing and handling disputes and verification requests. (Ex. 1, ¶ 32).

**Basis for Dispute:** Weltman did receive Plaintiff's dispute and request for verification and failed to follow its purported policies and procedures regarding processing and handling disputes and verification requests. (Ex. 6; Ex. 5, 38:18-40:11; 41:23-42:7; 43:4-46:19; Ex. 7, at Lampert 000012 and Lampert 000028).

**21**.    Weltman maintains a Consumer Dispute and Verification Policy as part of its standard operating procedures which applies to all Weltman employees. (Ex. 1, ¶ 17; Consumer Dispute and Verification Policy, filed under seal as Exhibit 11).

**Basis for Dispute:** Weltman has not offered any evidence to establish that it actually maintains and implements its purported Consumer Dispute and Verification Policy. Specifically, had Weltman adequately maintained and implemented its purported policy, it would have verified the alleged Discover Bank debt before filing the collection lawsuit. Weltman received Plaintiff's dispute and verification request via fax on December 1, 2017. (Ex. 6; Ex. 5, 38:18-40:11; 41:23-42:7; 43:4-46:19; Ex. 7, at Lampert 000012 and Lampert 000028). Despite receiving Plaintiff's dispute and request for verification, Weltman did not verify the debt prior to filing the collection lawsuit as required by its purported policies.  (Ex. 1, ¶¶32-33; Plaintiff's Ex. A). Accordingly, there is no evidence that Weltman maintains and implements its purported policy.

**22**.    If Weltman receives a consumer dispute or request for verification, it is its policy to cease collection of the debt until Weltman obtains verification of the debt or any copy of a judgment, or the name and address of the original creditor. A copy of the verification or judgment, or name and address of the original creditor is mailed to the consumer. The verification may include, but is not limited to, all available statements or other account documents, including a copy of the judgment if obtained, in order to verify the creditor, amount due and the liable party on the account.

(Ex. 1, ¶ 18; Ex. 11).

**Basis for Dispute:** Weltman does not cease collection of a debt until it obtains verification of the debt.  Weltman received Plaintiff's dispute and verification request on December 1, 2017. (Ex. 6; Ex. 5, 38:18-40:11; 41:23-42:7; 43:4-46:19; Ex. 7, at Lampert 000012; Lampert 000028). Despite receiving Plaintiff's dispute and verification request, Weltman continued its collection efforts without first verifying the debt as evidenced by the filing the collection case against Plaintiff on February 2, 2018. (Ex. 6; Ex. 5, 38:18-40:11; 41:23-42:7; 43:4-46:19; Ex. 7, at Lampert 000012 and Lampert 000028; Ex. 1, ¶¶31-33).

**23**.   Weltman reviews and addresses all consumer disputes received through all communication channels available to a consumer such as mail, telephone, and fax. Weltman will process and respond to a consumer dispute as necessary during the agency collection, pending litigation, or post judgment phases. (Ex. 1, ¶ 19; Ex. 11).

**Basis for Dispute:** Weltman does not review and address all consumer disputes received through fax. Weltman received Plaintiff's dispute and verification request via fax on December 1, 2017. (Ex. 6; Ex. 5, 38:18-40:11; 41:23-42:7; 43:4-46:19; Ex. 7, at Lampert 000012 and Lampert 000028). Despite receiving Plaintiff's dispute and request for verification via fax, Weltman did not process or respond to Plaintiff's dispute and request for verification. (Ex. 1, ¶¶32-33; Plaintiff's Ex. A).

**24.**   If a dispute is made during pending litigation, that dispute is given to the attorney handling the file for further processing based upon the attorney's assessment of the case and the litigation proceedings. (Ex. 1, ¶ 20).

**Basis for Dispute:** Plaintiff disputed the alleged Discover Bank debt and requested verification during litigation of the collection case on multiple occasions. (Plaintiff's Ex. B; Ex. 5,

51:24-52:13). Weltman clearly had knowledge that Plaintiff disputed the amount claimed on the alleged Discover Bank debt as an Order entered in the collection lawsuit expressly states that Plaintiff "denies owing the amount claimed." (Plaintiff's Ex. B). Despite Plaintiff's disputes, Weltman's records indicate that Weltman never processed or addressed any of Plaintiff's disputes. (Plaintiff's Ex. A; Ex. 5, at 51:24-52:13; Ex. 1, at ¶¶32-33, Plaintiff's Ex. B).

**25**.   If and when Weltman receives any documentation from a consumer regarding a dispute, Weltman employees must take the following steps: (1) Identify the Weltman file number/account to update the account history notes that documentation from a consumer has been received; (2) Verify that the documentation supports the dispute [if an employee is unable to determine whether a communication relates to a dispute, the employee must seek supervisor or manager assistance immediately]; (3) Update Weltman's system status code to reflect the dispute; (4) Update all phone numbers on the account to reflect a cease to all calls; and (5) Label the written documentation with the Weltman file number, ensure the documentation is scanned to the file, and provide the physical paperwork to the Collections Clerical Support ("CCS") team for further handling. (Ex. 1, ¶ 21; Ex. 11).

**Basis for Dispute:** Despite receiving Plaintiff's dispute and request for verification, Weltman failed to (1) update the account history notes to reflect that documentation from Plaintiff was received; (2) update its system to reflect the dispute, (3) process Plaintiff's dispute and request for verification, and (4) respond to Plaintiff's dispute and request for verification. (Ex. 6; Ex. 5, 38:18-40:11; 41:23-42:7; 43:4-46:19; Ex. 7, at Lampert 000012 and Lampert 000028; Plaintiff's Ex. A; Plaintiff's Ex. B; Ex. 1, ¶32-33).

**29**.   If Weltman doesn't receive any documentation from a consumer about a dispute, it will handle the communication as a request for verification. (Ex. 1, ¶ 24; Ex. 11).

**Basis for Dispute:** Weltman did not handle Plaintiff's oral disputes as requests for verification. (Ex. 5, at 51:24-52:13; Plaintiff's Ex. A; Plaintiff's Ex. B). Weltman concedes that it never provided Plaintiff with verification of the alleged Discover Bank debt. (Ex. 1, ¶33).

33. Weltman utilizes a status coding process to identify all accounts in which a dispute or verification request has been received. This status coding ensures systematic blocks are in place to prevent further collection and/or legal efforts until the dispute or verification request has been resolved in accordance with the FDCPA. (Ex. 1, ¶ 26; Ex. 11).

**Basis for Dispute:** Despite receiving Plaintiff's dispute and request for verification, Weltman failed to code Plaintiff's account as disputed and cease collection and legal efforts. (Ex. 1, ¶31; Ex. 6; Ex. 5, 38:18-40:11; 41:23-42:7; 43:4-46:19; Ex. 7, at Lampert 000012 and Lampert 000028; Plaintiff's Ex. A; Plaintiff's Ex. B).

35. If Weltman would have received a request for verification from Plaintiff, it would have followed its policies and procedures for handling consumer disputes and verification requests which would have prevented the filing of the collection lawsuit until after verification was sent to Plaintiff. (Ex. 1, ¶ 36).

**Basis for Dispute:** Despite receiving Plaintiff's dispute and request for verification, Weltman failed to follow its purported policies and procedures as evidenced by the filing the collection case against Plaintiff without first verifying the alleged Discover Bank debt. (Ex. 1, ¶31; Ex. 6; Ex. 5, 38:18-40:11; 41:23-42:7; 43:4-46:19; Ex. 7, at Lampert 000012 and Lampert 000028; Plaintiff's Ex. A; Plaintiff's Ex. B).

36. All Weltman attorneys and employees are trained on relevant Weltman's standard operating procedures for the Fair Debt Collection Practices Act (aka FDCPA Training) during the onboarding process when hired. (Ex. 1, ¶ 6).

**Basis for Dispute:** Had Weltman's attorneys been trained on FDCPA training, they would have ceased collection activity after receiving Plaintiff's dispute and request for verification until the alleged Discover Bank debt was verified as required by the FDCPA. (Ex. 1, ¶31; Ex. 6; Ex. 5, 38:18-40:11; 41:23-42:7; 43:4-46:19; Ex. 7, at Lampert 000012 and Lampert 000028; Plaintiff's Ex. A; Plaintiff's Ex. B).

**37**. Weltman's FDCPA training includes in-person training and online training for the role the person is to fulfill within Weltman's operations. (Ex. 1, ¶ 6).

**Basis for Dispute:** Had Weltman's personnel been trained on FDCPA training, they would have ceased collection activity after receiving Plaintiff's dispute and request for verification until the alleged Discover Bank debt was verified as required by the FDCPA. (Ex. 1, ¶31; Ex. 6; Ex. 5, 38:18-40:11; 41:23-42:7; 43:4-46:19; Ex. 7, at Lampert 000012 and Lampert 000028; Plaintiff's Ex. A; Plaintiff's Ex. B).

**38**. Weltman employees and attorneys are periodically trained on manuals, policies and procedures throughout the entire duration of employment, relevant to their positions. (Ex. 1, ¶ 6).

**Basis for Dispute:** Had Weltman's employees and attorneys been periodically trained, they would have ceased collection activity after receiving Plaintiff's dispute and request for verification until the alleged Discover Bank debt was verified as required by the FDCPA. (Ex. 1, ¶31; Ex. 6; Ex. 5, 38:18-40:11; 41:23-42:7; 43:4-46:19; Ex. 7, at Lampert 000012 and Lampert 000028; Plaintiff's Ex. A; Plaintiff's Ex. B).

**39**. Not only are employees and attorneys trained, but all standard operating procedures are readily available for employees to access from company records. (Ex. 1, ¶ 6).

**Basis for Dispute**: Had Weltman's employees and attorneys been trained, they would have ceased collection activity after receiving Plaintiff's dispute and request for verification until

the alleged debt was verified as required by the FDCPA. (Ex. 1, ¶31; Ex. 6; Ex. 5, 38:18-40:11; 41:23-42:7; 43:4-46:19; Ex. 7, at Lampert 000012 and Lampert 000028; Plaintiff's Ex. A and Plaintiff's Ex. B).

**40**.   Weltman's Consumer Dispute and Verification Policy is a policy that all Weltman employees and attorneys are required to be trained on. (Ex. 1, ¶ 7; Ex. 11).

**Basis for Dispute:** Had Weltman's employees and attorneys been trained on the purported policy, Weltman would have ceased collection activity after receiving Plaintiff's dispute and request for verification until the alleged Discover Bank debt was verified as required by the FDCPA. (Ex. 1, ¶31; Ex. 6; Ex. 5, 38:18-40:11; 41:23-42:7; 43:4-46:19; Ex. 7, at Lampert 000012 and Lampert 000028; Plaintiff's Ex. A; Plaintiff's Ex. B).

### C.   Additional Material Facts

**1**.   Plaintiff is a disabled woman. (Ex. 5, at 55:12-23).

**2**.   Plaintiff was forced to appear pro se to defend the collection case. (Ex. 5, at 57:11-12).

**3**.   Plaintiff had to appear in court five (5) times to defend the collection case. (Ex. 5, at 55:4-6).

**4**.   Plaintiff's disability made it exceptionally difficult for her to travel to the courthouse to defend the collection case. (Ex. 5, at 55:14-23).

**5**.   Plaintiff suffered significant damages as a result of having to defend the collection case, including anxiety, stress, loss of time, inconvenience, and monetary loss in the form of travel expenses and parking fees expenses in connection with the court appearances. (Ex. 5, at 22:18-19; 24:8-10; 39:12-19; 54:12-18; 55:3-6; 57:14-15; 58:11-13; 75:21-23; 76:1-4).

## LEGAL STANDARD

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P 56(c). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The Court must draw all reasonable inferences in favor of the nonmovant. *Bennington v. Caterpillar Inc.,* 275 F.3d 654, 658 (7th Cir. 2001). "Summary judgment is not appropriate 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Payne v. Pauley,* 337 F.3d 767, 770 (7th Cir. 2003).

## ARGUMENT

The FDCPA is a consumer protection statute designed to "eliminate abusive debt collection practices by debt collectors." *Suesz v. Med-1 Solutions, LLC,* 757 F.3d 636, 639 (7th Cir. 2014). Congress expressly found that "there is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." *Baldwin v. McCalla, Raymer, Padrick, Cobb, Nichols & Clark, L.L.C.*, 1999 WL 284788, at *3 (N.D. Ill. 1999) *citing* 15 U.S.C. §1692(a). Section 1692g(b) of the FDCPA provides:

> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this title may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and

> communication during the 30-day period may not overshadow or be inconsistent
> with the disclosure of the consumer's right to dispute the debt or request the
> name and address of the original creditor. 15 U.S.C. §1692g(b).

Here, Weltman violated the black letter of Section 1692g(b) of the FDCPA by failing to cease collection activity after receiving Plaintiff's dispute and request for verification. Specifically, Weltman filed the collection lawsuit against Plaintiff on February 2, 2018 after receiving Plaintiff's dispute and request for verification on December 1, 2017. (Ex. 1, ¶31; Ex. 6; Ex. 5, 38:18-40:11; 41:23-42:7; 43:4-46:19; Ex. 7, at Lampert 000012 and Lampert 000028). Pursuant to Section 1692g(b), Weltman was required to verify the debt prior to filing the collection case. Weltman concedes that it did not verify the debt prior to filing the collection case. (Ex. 1, ¶¶31-32). Accordingly, the evidence establishes that Weltman violated Section 1692g(b) of the FDCPA.

Undeterred by the existence of material issues of fact and compelling evidence supporting Plaintiff's claims, Weltman erroneously contends that it is entitled to summary judgment. Specifically, Weltman contends that summary judgment should be entered in its favor because (1) it never received Plaintiff's dispute and request for verification, and (2) even if it did, it is entitled to the bona fide error defense. Weltman is not entitled to summary judgment because (1) there is compelling evidence to establish that Weltman received Plaintiff's dispute and request for verification, and (2) the bona fide error defense presents factual issues that are not appropriate for adjudication at the summary judgment stage.

## I.     Plaintiff Has Presented Compelling Evidence that Weltman Received Plaintiff's Dispute and Request for Verification

Weltman contends that it is entitled to summary judgment because it did not receive Plaintiff's dispute and request for verification and thus had no obligation to verify the debt prior to filing the collection lawsuit. Specifically, Weltman argues that  there is no indication that Plaintiff actually faxed the dispute and request for verification to Weltman and that the fax

confirmation sheet presented by Plaintiff is "suspicious." Moreover, Weltman contends that the AT&T records for Weltman's fax number do not reflect that Weltman received a fax at the time Plaintiff sent her fax. Weltman's contentions must be rejected because they are refuted by the compelling evidence presented by Plaintiff.

Specifically, the fax confirmation establishes that Plaintiff sent a fax to Weltman's fax number at 11:04 a.m. (Ex. 6). Moreover, the fax confirmation further establishes that the fax took 1 minute and 31 seconds to transmit and that the fax was transmitted successfully at 11:06 a.m. (Ex. 6). AT&T's records for Weltman's fax number reflect that Weltman received a total of three faxes at 16:06 Coordinated Universal Time (UTC), which is expressed in military time. (Ex. 7, at Lampert 000012 and Lampert 000028). The 16:06 UTC reflected on AT&T's records converts to 11:06 a.m. Central Standard Time (CST), the precise time Plaintiff's fax machine issued the fax confirmation sheet. (Ex. 6, Ex. 7, at Lampert 000012 and Lampert 000028). Accordingly, AT&T's records and the fax confirmation sheet present compelling circumstantial evidence that Weltman received Plaintiff's fax. (Ex. 6; Ex. 7, at Lampert 000012 and Lampert 000028).

Here, the Court must construe all facts and draw all reasonable inferences in Plaintiff's favor. *Bennington*, 275 F.3d at 658 (7th Cir. 2001). As set forth above, Plaintiff has presented compelling evidence that Weltman received Plaintiff's fax, and as such a reasonable jury could return a verdict in her favor. *See Payne,* 337 F.3d at 770 (7th Cir. 2003) ("Summary judgment is not appropriate 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'") Accordingly, the Court must find that Weltman is not entitled to summary judgment as a genuine issue of material fact exists as to whether Weltman received Plaintiff's dispute and request for verification. *See Jarzyna v. Home Props., L.P.,* 114 F. Supp. 3d 243, 256 (E.D. Penn. 2015) (whether a letter was ever sent or received is an issue of fact that precludes

summary judgment); *Leventhal v. Schenberg (In re Leventhal),* 481 B.R. 409, 417 (N.D. Ill. 2012) ("Denial of receipt [of a notice] alone generally will not rebut a presumption of receipt but will create a question of fact.")

## II. Weltman is Not Entitled to Summary Judgment on its Bona Fide Error Defense

Weltman next contends that even if it had received Plaintiff's dispute and request for verification, the bona fide error defense absolves it from any liability under the FDCPA. The bona fide error defense provides a defense to a debt collector who shows by a preponderance of evidence that the violation was (1) not intentional; (2) the violation resulted from a bona fide error, and (3) the debt collector maintained procedures reasonably adapted to avoid any such error. *Kort v. Diversified Collection Servs., Inc.,* 394, F.3d 530, 536 *citing* 15 U.S.C. §1692k(c). The bona fide error defense is an affirmative defense in which the defendant bears the burden of proof. *See Alexander v. Unlimited Progress Corp.,* 2004 U.S. Dist. LEXIS 21013, at *10 (N.D. Ill. 2004) (defendant bears the burden of proving the bona fide error defense); *Edmonds v. Nat'l Check Bureau, Inc.,* 2003 U.S. Dist. LEXIS 17476, at *18 (S.D. Ind. 2003) ("Because 'bona fide error' is an affirmative defense under the [FDCPA], a defendant bears the burden of proving" the elements to the defense); *Gonzalez v. Lawent,* 2005 U.S. Dist. LEXIS 9504, at *18 (N.D. Ill. 2005) (bona fide error defense is an affirmative defense that the defendant bears the burden of proving).

Whether a debt collector is entitled to the bona fide error defense is usually a question of fact. *See Ferris v. Convergent Outsourcing, Inc.,* 2019 U.S. Dist. LEXIS 52237, at *17-26 (N.D. Ill. 2019) (denying summary judgment on debt collector's bona fide error defense; finding the defense to be a question of fact); *Keisler v. Encore Receivable Mgmt.,* 2008 U.S. Dist. LEXIS 31987, at *15 (S.D. Ind. 2008) (finding that a debt collector's bona fide error defense was a

question of fact); *Ramirez v. Palisades Collection LLC,* 2008 U.S. Dist. LEXIS 48722, at *19-20 (N.D. Ill. 2008) (finding genuine issue of fact with respect to the bona fide error defense precluded summary judgment); *Rosado v. Taylor,* 324 F.Supp. 2d 917, 933 (N.D. Ind. 2004) (denying cross-motions for summary judgment on debt collector's bona fide error defense; finding issues of material fact).

Here, Weltman contends that it has satisfied all three elements of the bona fide error defense and thus summary judgment must be entered in its favor. Weltman's contention must be rejected because it has failed to establish as a *matter of law* that (1) the violation was unintentional; (2) the violation resulted from a bona fide error; and (3) it maintains procedures reasonably adapted to avoid the error.

### A. Weltman Has Failed to Establish that the Violation was Unintentional and Resulting from a Bona Fide Error

Weltman contends that the filing of the collection lawsuit without first verifying the debt (the conduct that violates the FDCPA) must be found to be unintentional and resulting from a bona fide error because it has no record of Plaintiff's dispute and request for verification. Weltman's contention must be rejected because whether Weltman had record of Plaintiff's dispute and request for verification is irrelevant. What is relevant is whether Weltman actually received Plaintiff's dispute and request for verification. As set forth in lengths above, Plaintiff has presented compelling evidence that Weltman received the dispute and request for verification via fax. (Ex. 6; Ex. 5, 39:5-8; 45:17-19; 46:17-19; Ex. 7, at Lampert 000012 and Lampert 000028). Moreover, Plaintiff has presented evidence that she repeatedly disputed and requested verification of the debt and that Weltman never verified the debt or otherwise addressed Plaintiff's dispute. (Plaintiff's Ex. A; Ex. 5, at 51:24-52:13; Ex. 1, at ¶¶32-33, Plaintiff's Ex. B). Accordingly, Plaintiff has

presented credible evidence that refutes Weltman's contention that the violation was not intentional.

Simply put, this Court cannot find as a matter of law that Weltman's violation was unintentional because whether Weltman's conduct was intentional rests on whether it received the dispute and request for verification, which is a heavily contested factual issue in this case. Courts faced with similar circumstances have rejected the bona fide error defense at the summary judgment stage when there is a factual issue on whether a communication was received. Specifically, in *Vazquez v. USCB Corp.,* 2018 U.S. Dist. LEXIS 113626 (N.D. Ill. 2018), the plaintiff brought FDCPA claims against a debt collector for attempting to collect a debt from the plaintiff after the plaintiff filed bankruptcy. *Id.* at *5-7. The debt collector contended that it had not received notice of plaintiff's bankruptcy filing from the bankruptcy court and asserted the bona fide error defense. *Id.* at *7, *19-20. The debt collector contended that the error was unintentional, thus supporting the bona fide error defense. The *Vazquez* court declined to adjudicate the merits of the debt collector's bona fide error defense at the summary judgment stage. *Id.* at *20-21. Specifically, the *Vazquez* court held:

> Here, the crux of the dispute between the parties is whether or not Defendant received the notice of bankruptcy. As discussed above, Defendant has come forth with sufficient evidence to rebut the presumption of receipt of the notice, thereby creating a question of fact that cannot be resolved at the summary judgment stage. And, in any event, even if the Court was to "presume that [Defendant] received the bankruptcy notice, a bona fide error may have occurred later in the process. For example, after receipt, the notice may have been lost or entered into someone else's debt record . . . the lack of an entry on [Plaintiff's] debt record would support this possibility." In light of this, **the question of whether the violation was unintentional, resulting from a bona fide error, is not one that the Court can decide as a matter of law** at this time. *Id.* at (internal citations omitted). *Id.* (emphasis added).

As demonstrated by the sound reasoning in *Vazquez,* the factual dispute pertaining to whether Weltman received Plaintiff's dispute and request for verification precludes the finding that the violation was unintentional, resulting from a bona fide error as a matter of law. Accordingly,

Weltman has failed to satisfy the first and second prongs of the bona fide error defense as a matter of law.

> **B.     Weltman Has Failed to Establish that it Maintains Procedures that are Reasonably Adapted to Avoid its Error**

In the event the Court finds that Weltman's violation was unintentional and resulting from a bona fide error, Weltman is still not entitled to summary judgment on its bona fide error defense because whether Weltman's procedures were reasonably adapted to avoid the error is a question of fact. Specifically, "the inquiry as to whether a given procedure is reasonable is by its nature fact-intensive and, therefore, typically reserved for a jury." *Narwick v. Wexler*, 901 F. Supp. 1275, 1282 (N.D. Ill. 1995); *Thomas v. Bowman Heintz Boscia & Vician, P.C., & Ind. Prof'l Corp*., 2009 U.S. Dist. LEXIS 77305, at *9-10 (S.D. Ind. 2009) (same); *Gaisser v. Portfolio Recovery Assocs., LLC,* 593 F. Supp. 2d 1297, 1303 (S.D. Fla. 2009) (holding that the question of whether the debt collector implemented procedures to reasonably avoid FDCPA violations was one for the jury). In light of the factual issues pertaining to Weltman's procedures, the Court should find that Weltman is not entitled to summary judgment on its bona fide error defense as a matter of law.

In the event that the Court finds that the question as to whether Weltman's procedures were reasonably adapted to avoid its error can be decided as a matter of law, Weltman is still not entitled to summary judgment because Weltman has failed to offer any evidence that it actually implemented and employed its purported policies. Specifically, in order to be entitled to the bona fide error defense, a debt collector must actually employ or implement its policies. *Johnson v. Riddle,* 443 F.3d 723, 729 (10th Cir. 2006). Here, instead of offering evidence to establish that it actually employs and implements its purported policies, Weltman merely offers the conclusory statement that "Weltman maintains a Consumer Dispute and Verification Policy as part of its standard operating procedures which applies to all Weltman employees." (Ex. 1, ¶17). Weltman's

conclusory statement does not offer any evidence on *how* it implements and trains its employees on its purported policies. Based on Weltman's reasoning, a debt collector would be able to skirt FDCPA liability by merely creating policies but not actually implementing and employing them. Weltman's reasoning must be rejected because it would render the FDCPA obsolete as it would allow debt collectors to violate the FDCPA with impunity.

Here, Plaintiff has presented evidence that suggest that Weltman does not actually employ or implement its purported policy pertaining to the verification of debts. Specifically, Plaintiff repeatedly disputed and requested verification of the debt and Weltman never verified the debt or otherwise addressed Plaintiff's dispute. (Plaintiff's Ex. A; Ex. 5, at 51:24-52:13; Ex. 1, at ¶¶32-33, Plaintiff's Ex. B). Weltman's failure to address Plaintiff's repeated disputes and requests for verification is fatal to its bona fide error defense because "the bona fide error defense is not available where there is actual notice of an FDCPA violation and the FDCPA violation continues." *McCollough v. Johnson, Rodenberg & Lauinger,* 610 F. Supp 2d 1247, 1259 (D. Mon. 20019) *citing Thompson v. D.A.N. Joint Venture III, L.P.,* 2007 U.S. Dist. LEXIS 41398, at *2 (M.D. Ala. 2007). Accordingly, Weltman has failed to satisfy the third prong of the bona fide error defense, and thus is not entitled to summary judgment in its favor.

## CONCLUSION

Weltman's Motion for Summary Judgment blatantly ignores the evidence in this case and the legal standard for summary judgment. Plaintiff has presented sufficient evidence in which a reasonable jury could return a verdict in her favor. Accordingly, Weltman is not entitled to summary judgment as a matter of law.

Dated: September 19, 2019                    Respectfully Submitted,

                                             *s/ Mohammed O. Badwan*
                                             Mohammed O. Badwan, Esq.
                                             *Counsel for Plaintiff*
                                             Sulaiman Law Group, Ltd.
                                             2500 S. Highland Avenue, Suite 200
                                             Lombard, Illinois 60148
                                             (630) 575-8180
                                             mbadwan@sulaimanlaw.com

## **CERTIFICATE OF SERVICE**

I, Mohammed O. Badwan, an attorney, certify that on September 19, 2019, I caused the foregoing to be served upon counsel of record through operation of the Court's Case Management/Electronic Case File (CM/ECF) system.


/s/ Mohammed O. Badwan