IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| DEBBIE H. LAMPERT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 18-cv-1223 |
| v. ) | |
| ) | Judge: Jonathan Hawley |
| WELTMAN, WEINBERG & REIS CO., LPA, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S REPLY IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT**

Defendant, WELTMAN, WEINBERG & REIS CO., LPA, ("Defendant" or "Weltman") by and through its undersigned attorneys, pursuant to the Federal Rules of Civil Procedure and the Local Rules for the Central District of Illinois Federal District Court, submits its Reply in support of its Motion for Summary Judgment, and states as follows:

**REPLY TO PLAINTIFF'S ADDITIONAL MATERIAL FACTS**

1.   Plaintiff is a disabled woman. (Ex. 5, at 55:12-23).

**RESPONSE: Undisputed that Plaintiff testified to having a disability as a layperson. Disputed to the extent that Plaintiff fails to submit any evidence of a medical professional's diagnosis of Plaintiff's claim disability. Plaintiff's self-serving lay opinion is insufficient to establish she qualifies as a legally disabled person. Plaintiff has not disclosed any medical doctors or medical opinions to support any conclusion that she is a disabled person.**

2.   Plaintiff was forced to appear pro se to defend the collection case. (Ex. 5, at 57:11-12).

**RESPONSE: Undisputed that Plaintiff appeared pro-se to defend the collection case. Disputed to the extent that Plaintiff fails to put forth evidence that Plaintiff was "forced" to appear pro se in the collection case.**

3. Plaintiff had to appear in court five (5) times to defend the collection case. (Ex. 5, at 55:4-6).

**RESPONSE: Undisputed that Plaintiff appeared in court five times for court hearings.**

4. Plaintiff's disability made it exceptionally difficult for her to travel to the courthouse to defend the collection case. (Ex. 5, at 55:14-23).

**RESPONSE: Undisputed that Plaintiff testified that driving and sitting for extended periods of time is uncomfortable; therefore, driving for court appearance was inconvenient. Disputed to the extent that Plaintiff fails to submit any evidence of a medical professional's diagnosis of Plaintiff's claimed disability and any limitations. Plaintiff's self-serving lay opinion is insufficient to establish she qualifies as a legally disabled person. Plaintiff has not disclosed any medical doctors or medical opinions to support any conclusion that she is a disabled person.**

5. Plaintiff suffered significant damages as a result of having to defend the collection case, including anxiety, stress, loss of time, inconvenience, and monetary loss in the form of travel expenses and parking fees expenses in connection with the court appearances. (Ex. 5, at 22:18-19; 24:8010; 39:12-19; 45:12-18; 55:3-6; 57:14-15; 58:11-13; 75:21-23; 76:1-4).

**RESPONSE: Undisputed that Plaintiff testified that her damages consist of anxiety, stress, loss of time, inconvenience, and monetary loss in the form of travel expenses and parking fees. The remainder is disputed. Plaintiff fails to put forth evidence other than Plaintiff's own self-serving testimony of her emotional and monetary damages. Plaintiff has not disclosed or produced any extrinsic evidence, medical records, bills or other documents to support her claim of emotional or economic damages.**

**ARGUMENT**

**1. Summary Judgment should be entered in favor of Weltman because there is no credible proof that Plaintiff submitted a request for verification to Weltman.**

The record shows that Weltman did not have knowledge of any written request for verification from Plaintiff when it filed a collection lawsuit to collect Plaintiff's outstanding debt. Plaintiff misrepresents the AT&T records to support her suspicious fax confirmation sheet. The AT&T records of all calls to Weltman's fax number on Dec. 1, 2017 show Plaintiff did not transmit any document to Weltman. The record shows that on Dec 1, 2017, there were three separate calls made to Weltman's fax number around 16:06 UTC, *see* Dkt. # 18-7, Lampert 000028, Ex 7. An excerpt table of data from the AT&T records below shows the three calls (highlighted in yellow) that Plaintiff wants to contort to support her claim. The facts are not so malleable, as will be explained.

| Conn Date Time (UTC) | Originating # | Sec. Orig. | Terminating # | Dialed # | Elapsed Time |
|---|---|---|---|---|---|
| 12/01/17   15:26:22 | 8883908239 | | 2163634121 | | 1:47 |
| 12/01/17   16:06:40 | | | 2163634121 | | 4:14 |
| 12/01/17   16:06:41 | | | 2163634121 | | 4:14 |
| 12/01/17   16:06:42 | 423630 | | 2163634121 | | 4:15 |
| 12/01/17   20:45:10 | | | 2163634121 | | 1:54 |

The first fact that contradicts the Plaintiff's argument is that these three calls each lasted approximately over four minutes, as shown in the "Elapsed Time" for each call as 4:14 or 4:15. According to the AT&T Records key (*see* Dkt. # 18-7, Lampert 000012, Ex. 7), elapsed time is defined as the "Duration of the transaction. Duration is in MM:SS." Plaintiff's alleged fax transmission took one minute and 31 seconds or 1:31. However, the three listed calls had transmission durations over 4 minutes of either 4:14 or 4:15. None of these three calls can be the Plaintiff's alleged fax because they lasted significantly longer than Plaintiff's alleged transmission.

The second fact that contradicts the Plaintiff's argument is that these three calls were all commenced between 16:06 and 16:07 UTC on December 1, 2017. Converting UCT time to Central Time is not difficult, but one must account for daylight savings time. As explained on Wikipedia

3

about the Central Time Zone:

> Central Standard Time (CST) is six hours behind Coordinated Universal Time (UTC). During summer most of the zone uses daylight saving time (DST), and changes to Central Daylight Time (CDT) which is five hours behind UTC.
> See https://en.wikipedia.org/wiki/Central_Time_Zone

In this case, the plaintiff lives in Illinois, which is in Central Time (U.S.). To convert 16:06 UTC into Central Time, during the winter months when daylight savings time is not observed, one would subtract 6 hours, to get 10:06 in Central Time. Applying this basic math to the facts of this case, it is without doubt that 16:06 UTC on Dec. 1, 2017 translates to 10:06 Central Time. Plaintiff's alleged fax transmission commenced at 11:04 a.m. Central Time on Dec. 1, 2017. The three calls Plaintiff would like to transform into a record of her fax were all commenced <u>an hour earlier</u>, at 10:06 a.m., than her alleged call at 11:04 a.m. Plaintiff has her math wrong.

The third fact that contradicts the Plaintiff's argument is that these three calls were all commenced between 16:06 and 16:07 UTC. According to the AT&T Records key, *see* Dkt. # 18-7, Lampert 000012, Ex. 7, "Conn Date Time" is defined as "Conn Date Time Connection date and time - Date and Time the call was connected. Displayed as one column on the Landline Call Detail." This means the time listed of 16:06 is the time the call began. Plaintiff argues that these times represent when the calls finished, which is simply a distortion of the facts. Plaintiff argues that her fax began at 11:04 a.m., took approximately 1 minute 31 seconds, and then ended at 11:06. The AT&T records unequivocally show that each of these three calls commenced at 16:06 UTC or 10:06 a.m. Central Time on Dec. 1, 2017. Plaintiff's alleged call began at four minutes after the hour, which is different than all three of these calls that began at six minutes after the hour. The time of Plaintiff's fax does not match the hour or the minute of the calls shown on the AT&T records.

Finally, the fourth fact that contradicts the Plaintiff's argument is that Plaintiff's phone number used to send the alleged fax does not appear an originating number for any call. The AT&T

4

records show inbound calls to Weltman's fax number from Nov. 29, 2017 to Dec. 5, 2017. For most of these calls, an originating number is listed as the phone number from which the call was made. *See* Dkt. # 18-7, Ex 7 (Lampert 000028). Plaintiff's phone number is not listed as an originating number for any call on Ex 7 because Plaintiff never sent the alleged fax as she claims.

There are no material facts which dispute the fact that Weltman did not receive a written verification request from Plaintiff. Reviewing the record, the inescapable conclusion is that Plaintiff's alleged fax confirmation sheet is not to be believed.

**2. This Court should grant summary judgment in favor of Weltman because any violation of the FDCPA would have occurred due to an bona fide error and Weltman has reasonable policies and procedures to comply with §1692g(b).**

Even if Weltman received the alleged fax from Plaintiff (which it denies), Weltman has produced sufficient evidence to meet all three requirements of the bona fide error defense. Plaintiff claims that Weltman cannot meet the first prong of the bona fide error defense because filing a collection lawsuit against Plaintiff before sending her validation of her debt was not a mistake. (Pl.'s Br., p. 19). However, Plaintiff is mistaken. Under the first prong, a debt collector only needs to show that the violation of the FDCPA was unintentional, not that the *communication itself* was unintentional. *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 538 (7th Cir. 2005). Weltman's procedures show that it will not file a lawsuit if Weltman receives a verification request. The bona fide error defense applies to clerical or factual mistakes. *See Jerman v. Carlisle, McNellie, Rini Kramer & Ulrich LPA*, 559 U.S. 573, 587 (2010). Thus, if Weltman would have received a verification request from Plaintiff, Weltman's standard operating procedures would have prevented the lawsuit from being filed because the account would have been noted and systematically placed in a temporary cease status. (Dkt. # 18, SMF, ¶¶ 25-27). The filing of the suit was an error, if the fax was received.

Plaintiff claims that Weltman is not entitled to the bona fide error defense because "a heavily contested factual issue" of whether the verification letter was received. However, Plaintiff is wrong.

5

First, Plaintiff's grossly inaccurate UTC to Central time conversion and gross misreading of the AT&T call records do not create a question of fact. Secondly, Plaintiff mistakenly relies upon *Vazquez v. USCB Corp.*, because in that case the Bankruptcy court's certificate of mailing created a presumption that the court notice was delivered, the Court thought there was a question of fact regarding the receipt of the letter that prevented summary judgment on the asserted bona fide error defense[1]. 2018 U.S. Dist. LEXIS 113626 (N.D. Ill. Jul. 9, 2018). In this case, there is no presumption of delivery for the alleged fax. The unauthenticated fax confirmation is not analogous to a court notice sent via mail for which the court's clerk issued a sworn certificate of mailing.

Recently, and in contrast to *Vasquez*, a court decided that a defendant was entitled to the bona fide error defense for not reporting debts as disputed after the plaintiffs allegedly sent dispute letters to a fax number belonging to the defendant. *See Irvin v. Nationwide Credit and Collection, Inc.*, Case No. 18 C 2945, 2019 U.S. Dist. LEXIS 158167 (N.D. Ill. Sept. 17, 2019). In *Irvin*, the plaintiffs allegedly sent dispute letters via fax but the defendant submitted evidence that it no longer used the fax number and it had no record of such faxes. *Id.* at *3-4, 7-8. In addition, the defendant's fax log showed no receipt of the faxes. *Id.* at *8. In *Irvin*, the court also analyzed whether the bona fide error defense was applicable even if the plaintiffs' fax confirmations were sufficient to conclude that the defendant received and reasonably should have known of the dispute letters. *Id.* at *8-11. The Court held that even if the continued reporting was a violation of the FDCPA, the defendant was entitled to the bona fide error defense. *Id.* The court stated there was no evidence that anyone at the defendant's office had actual knowledge of the alleged dispute and the defendant had procedures in

---

[1] Weltman also believes the court in *Vazquez* was incorrect in its analysis of how the bona fide error defense works and therefore was incorrect in evaluating what facts are relevant to the application of the bona fide error defense. However, Weltman cannot fully address the gaps in the *Vazquez* case as that would be an appellate brief. Weltman urges this Court to avoid *Vazquez* and to read the numerous cases in the 7th Circuit applying the bona fide error defense in a summary judgment motion in ruling for a Defendant.

place that were reasonably adapted to avoid the alleged error. *Id.* at *9.

Similar to *Irvin*, it is undisputed that Weltman does not have any record of receiving the alleged written verification letter which Plaintiff claims was faxed to a Weltman fax number. (Dkt. # 18, SMF, ¶ 8). There is no doubt that any alleged error was unintentional and bona fide because Weltman has a policy and procedure to cease all collection activity until a dispute or verification request has been resolved in accordance with the FDCPA. (Dkt. # 18, SMF, ¶ 33). Weltman's standard operating procedure for handling correspondence from consumers applies to all Weltman employees, who are expected to follow the standard operating procedure, and explicitly applies to faxes. Weltman's standard operating procedure, (Dkt. # 18, SMF, ¶ 23), has the orderly steps which fit the Seventh Circuit's guidance on what types of procedures qualify for the bona fide error defense. This is why Plaintiff avoids and fails to cite the binding authorities in which the Seventh Circuit has approved procedures as reasonable for application of the bona fide error defense. *See Abdollahzadeh v. Mandarich Law Grp., LLP*, 922 F.3d 810 (7th Cir. 2019); *Ross v. RJM Acquisitions Funding LLC*, 480 F.3d 493 (7th Cir. 007); *Jenkins v. Heintz*, 124 F.3d 824 (7th Cir. 1997).

In an effort to save her claim, Plaintiff makes the unsupported and wild accusation that Weltman does not actually employ or implement its policies and procedures regarding the verification of debts. (Pl.'s Br., p. 22). Plaintiff fails to offer any actual facts to dispute the sworn affidavit of Weltman's partner in charge of the Chicago office and paragraphs ¶36-40 of the statement of material facts. (Dkt. # 18, pp. 7-8).

Finally, any alleged "dispute" of a debt by Plaintiff after the 30 day validation period had expired and during the state court collection litigation is immaterial to whether Weltman is entitled to the bona fide error defense. Weltman has satisfied all three prongs of the bona fide error defense and should not be held liable for a violation of the FDCPA. This Court should grant summary judgment in favor of Weltman.

7

WHEREFORE, Defendant, WELTMAN, WEINBERG & REIS CO., LPA, respectfully requests that this Court enter an order granting Defendant's motion for summary judgment, entering judgment in favor of Defendant and against Plaintiff, and for any other relief this Court deems just.

        Respectfully submitted,

        HINSHAW & CULBERTSON LLP

        */s/ Nabil G. Foster*
        Nabil G. Foster

Nabil G. Foster
Lindsey A.L. Conley
Hinshaw & Culbertson LLP
151 North Franklin Street, Suite 2500
Chicago, IL 60606
Telephone: 312-704-3000
Facsimile: 312-704-3001
E-mail: nfoster@hinshawlaw.com
E-mail: lconley@hinshawlaw.com

304461526v1 1011981

**CERTIFICATE OF SERVICE**

      I, Nabil G. Foster, an attorney, certify that I shall cause to be served a copy of **DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** upon the following individual(s), by deposit in the U.S. mail box at 151 North Franklin Street, Chicago, Illinois 60606, postage prepaid, messenger delivery, Federal Express, facsimile transmitted from (312) 704-3001, or electronically via the Case Management/Electronic Case Filing System ("ECF") as indicated, this on October 3, 2019.

| | | |
|---|---|---|
| X | CM/ECF | *Attorneys for Plaintiff(s)* |
| ___ | Facsimile | Joseph Davidson |
| ___ | Federal Express | Mohammed O. Badwan |
| ___ | E-Mail | SULAIMAN LAW GROUP, LTD. |
| ___ | Messenger | 2500 South Highland Avenue, Suite 200 |
| | | Lombard, IL  60148 |
| | | Phone: 630.575.8181 |
| | | Fax: 630.575.8188 |
| | | jdavidson@sulaimanlaw.com |
| | | mbadwan@sulaimanlaw.com |

Nabil G. Foster  
Lindsey A.L. Conley  
HINSHAW & CULBERTSON LLP  
151 North Franklin Street, Suite 2500  
Chicago, IL 60606  
Telephone: 312-704-3000  
Facsimile: 312-704-3001  
nfoster@hinshawlaw.com  
lconley@hinshawlaw.com  

*/s/ Nabil G. Foster*  
Nabil G. Foster  
One of the Attorneys for Defendant

304461526v1 1011981