# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| DEBBIE H. LAMPERT, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 18-cv-1223-JES-JEH |
| WELTMAN, WEINBERG & REIS CO., LPA, | ) |
| Defendant. | ) |

## ORDER AND OPINION

This matter is now before the Court on Defendant's Motion (Doc. 18) for Summary Judgment. Plaintiff has filed a Response (Doc. 21), to which Defendant has filed a Reply (Doc. 22). For the reasons set forth below, Defendant's Motion (Doc. 18) is GRANTED.

### BACKGROUND

Plaintiff, Debbie Lampert, alleges in her Complaint that Defendant, Weltman, Weinberg & Reis Co., LPA ("Weltman"), violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692g *et seq.*, when it failed to cease collection activities following Plaintiff's request for verification of the debt. Doc. 1. Under the FDCPA, if a consumer notifies a debt collector in writing within the 30-day period following the debt collector's initial communication to the consumer that the debt is disputed, or the consumer requests verification of the debt, the debt collector must cease collection of the debt until the debt collector obtains and sends the consumer verification of the debt. 15 U.S.C. § 1692g(b).

The following facts are undisputed by the parties. Plaintiff incurred a financial obligation to Discover Bank and defaulted on that debt some time in 2017. On November 3, 2017, Discover Bank placed the account balance owed of $5,553.04 with Weltman for collection of the past due

1

amount. On November 22, 2017, Weltman sent Plaintiff an initial collection letter seeking to collect the debt owed to Discover Bank. Plaintiff alleges in her Complaint that on November 27, 2017, she mailed Weltman a letter to dispute the validity of the debt and to seek verification of the debt.[1] On February 2, 2018, Weltman filed a collection lawsuit in the Circuit Court of the 10th Judicial Circuit, Tazewell County, Illinois captioned as *Discover Bank v. Debbie H. Lampert*, 2018 SC 137 (the "collection lawsuit"). The collection lawsuit stated that the amount due and owing was the sum of $5,553.04 and attached a copy of the Discover Card Account Summary showing the same amount owed. Doc. 21, at 2.

Between November 22, 2017, when Weltman sent an initial collection letter to Plaintiff, and February 2, 2018, when Weltman filed a collection lawsuit on behalf of Discover Bank, Weltman did not send correspondence to Plaintiff with verification of her debt. Plaintiff claims in her Response to Defendant's Motion for Summary Judgment that on December 1, 2017 at 11:04 a.m., she faxed a three-page document to Weltman's fax number of (216) xxx-4121 from Plaintiff's fax number of (309) xxx-1939. Plaintiff has produced an alleged fax confirmation transmission page dated December 1, 2017 together with an unsigned two-page letter addressed to Weltman.[2] Doc. 21, at 3; Doc. 18-6.

## LEGAL STANDARD

Summary judgment is appropriate where the movant shows, through "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations … admissions, interrogatory answers, or other materials" that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. In resolving a motion for summary judgment, "[t]he court has one task

---

[1] *But see* fn. 2, *infra*.
[2] *Cf.* fn. 1, *supra*.

and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

In order to withstand a motion for summary judgment, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). When presented with a motion for summary judgment, the Court must construe the record "in the light most favorable to the nonmovant and avoid[] the temptation to decide which party's version of the facts is more likely true." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). If the evidence, however, is "merely colorable, or is not significantly probative or merely raises 'some metaphysical doubt as the material facts,' summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50. Thus, in order to overcome the undisputed facts set forth in a defendants' motion for summary judgment, a plaintiff cannot rest on the allegations in his complaint but must point to affidavits, depositions or other evidence of an admissible sort that a genuine dispute of material fact exists between parties. Fed. R. Civ. P. 56(e)(2); *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996).

## DISCUSSION

### (1) Whether Plaintiff Submitted a Request for Verification to Weltman

The Court first addresses whether Plaintiff submitted a request for verification to Weltman, beginning with the factual allegations in Defendant's Motion that Plaintiff asserts are disputed. Defendant asserts that Weltman did not send correspondence to Plaintiff with verification of her debt because Weltman has no record of receiving any verification request from Plaintiff. Doc. 18, at ¶8. Plaintiff asserts this fact is disputed because, "[a]lthough Weltman has no record of receiving Plaintiff's dispute and request for verification, Plaintiff did in fact send a

3

dispute and request for verification to Weltman via fax to Weltman's fax number." Doc. 21, at 5. Defendant's statement relates to whether Weltman has a record of Plaintiff's verification request, not whether Plaintiff actually sent the request or whether Weltman actually received the request. Therefore, the statement of fact is not properly disputed by Plaintiff, and the Court will consider it as undisputed.

Defendant also asserts that AT&T, Weltman's telephone and fax service provider, responded to Plaintiff's third-party subpoena to produce all call details (incoming and outgoing) related to fax number (216) xxx-4121 from November 1, 2017 through December 31, 2017, and that AT&T's records do not show that Weltman received any call from Plaintiff's fax number on December 1, 2017 at 11:04 a.m. Doc. 18, at ¶ 10. Plaintiff's response to this proposed statement of fact is set forth in its entirety below.

> Basis for Dispute: According to the fax confirmation sheet, Plaintiff sent the fax to Weltman's fax number (216) xxx-4121 on December 1, 2017 at 11:04 a.m. and the fax took 1 minute and 31 seconds to transmit. (Ex. 6). At 11:06 a.m., Plaintiff received confirmation that the fax was successfully delivered to Weltman's fax number (216) xxx-4121. (Ex. 6; Ex. 5, at 53:17- 19). AT&T's records indicate that Weltman received a total of three faxes at 16:06 Coordinated Universal Time (UTC), which is expressed in military time. (Ex. 7, at Lampert 000012 and Lampert 000028). The 16:06 UTC reflected on AT&T's records converts to 11:06 a.m. Central Standard Time (CST), the precise time Plaintiff's fax machine issued the fax confirmation sheet. (Ex. 6, Ex. 7, at Lampert 000012 and Lampert 000028). Accordingly, AT&T's records and the fax confirmation sheet demonstrate that Plaintiff's fax was successfully delivered to Weltman. (Ex. 6; Ex. 7, at Lampert 000012 and Lampert 000028).

Doc. 21, at 5–6. Thus, the basis for the parties' dispute stems from the parties' differing interpretation of AT&T's records and Plaintiff's purported fax confirmation sheet. Doc. 18-7, at 18; Doc. 18-6, at 2–4. Plaintiff asserts that her purported fax confirmation sheet indicates that she sent the fax to Weltman on December 1, 2017 at 11:04 a.m. and the fax took 1 minute and 31 seconds to transmit, ending the transmission at 11:06 a.m. Plaintiff asserts that AT&T's records

4

support her position because the records indicate that Weltman received three faxes at 16:06 UTC. In doing so, Plaintiff converts 16:06 Universal Coordinated Time ("UTC") to 11:06 a.m. Central Standard Time ("CST") and asserts that this was the precise time Plaintiff's fax machine issued the fax confirmation sheet.

In its Reply, Defendant first notes that the three calls in the AT&T records that Plaintiff asserts support her position each lasted over 4 minutes, significantly longer than the 1 minute and 31 seconds recorded on Plaintiff's purported fax confirmation sheet.[3] Doc. 22, at 3. Second, Defendant notes that Plaintiff incorrectly converted Universal Coordinated Time to Central Standard Time. *Id*. at 4. In December, when daylight savings time is not observed in Illinois, 16:06 UTC converts to 10:06 a.m. CST; not 11:06 a.m. Third, Defendant argues that AT&T's records indicate when the calls were commenced. Each of the three calls in AT&T's records commenced between 16:06 and 16:07 UTC, which contradicts Plaintiff's purported fax confirmation sheet indicating the call was initiated 4 minutes after the hour.

Defendant's position is correct. A careful review of AT&T's records indicate that no fax was received by Weltman on December 1, 2017 at 11:04 a.m. CST. Plaintiff's theory of the case does not align with the minute or hour of the three calls at issue in AT&T's records. Thus, contrary to Plainiff's argument, the AT&T records do not demonstrate that Plaintiff's fax was successfully delivered to Weltman. Thus, the Court considers as undisputed Defendant's

---

[3] The following table is an excerpt from AT&T's records :

| Conn Date Time (UTC) | Originating # | Sec. Orig. | Terminating # | Dialed # | Elapsed Time |
|---|---|---|---|---|---|
| 12/01/17 15:26:22 | 8883908239 | | 216xxx4121 | | 1:47 |
| 12/01/17 16:06:40 | | | 216xxx4121 | | 4:14 |
| 12/01/17 16:06:41 | | | 216xxx4121 | | 4:14 |
| 12/01/17 16:06:42 | 423630 | | 216xxx4121 | | 4:15 |
| 12/01/17 20:45:10 | | | 216xxx4121 | | 1:54 |

5

statement that AT&T's records do not show that Weltman received any call from Plaintiff's fax number on December 1, 2017 at 11:04 a.m.

However, although AT&T's records do not collaborate Plaintiff's claim, Plaintiff has produced a purported fax confirmation sheet,[4] which is reproduced below.

```
Jul 23 18 10:59a      Signature Confirma                    0000001939           p.3


HP Officejet Pro 8620 Series              Fax Log for
                                          Signature Confirma
                                          0000001939
                                          Dec 01 2017 11:06AM


Last Transaction

Date    Time      Type          Station ID         Duration   Pages   Result
                                                   Digital Fax

Dec 1   11:04AM   Fax Sent      12163634121        1:31       3       OK
                                                   N/A
```

Doc. 18-6, at 4. Defendant asserts that this document is "suspicious," "suspect," and "appears fabricated." Doc. 18, at 9, 10. Defendant thus argues that there is no credible evidence to support Plaintiff's claim, and summary judgment should be granted in favor of Weltman. *Id*. at 10.

While Defendant is correct that Plaintiff's fax log is at odds with AT&T's records, for the purposes of summary judgment, Plaintiff has produced sufficient evidence to demonstrate a material factual dispute regarding whether Plaintiff sent a fax to Weltman requesting verification of the debt. Defendant believes that its evidence is more credible than Plaintiff's. But, on a motion for summary judgment, "the non-movant need not match the movant witness for witness, nor persuade the court that her case is convincing." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 921 (7th Cir. 1994). Likewise, "because summary judgment is not a paper trial, the district

---

[4] The Court notes this document appears to be a fax log generated from Plaintiff's fax machine, not a "signature confirmation sheet."

6

court's role in deciding the motion is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Id*. at 920. Accordingly, Defendant is not entitled to summary judgment on this basis.

**(2) Whether Weltman is Entitled to Summary Judgment on the Bona Fide Error Defense**

Alternatively, Defendant argues it is entitled to summary judgment under the FDCPA's bona fide error defense. Under the bona fide error defense, "a debt collector may not be held liable under the FDCPA if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 536 (7th Cir. 2005) (internal quotations and emphasis omitted); 15 U.S.C. § 1692k(c).

The parties do not dispute that Weltman maintains a regular consumer mail policy as part of its standard operating procedures which applies to all written correspondence received by Weltman's Office Operations Department. Although the following statements are listed as disputed by Plaintiff, the basis for each dispute is the same. Thus, the Court will first set forth those statements and then analyze whether Plaintiff has properly disputed them.

Weltman's Office Operations Department ("OPS department") receives and processes all written correspondence that is received by Weltman. Upon receipt of any correspondence, Weltman uses any identifying information in the communication to locate the account to which it relates in Weltman's system, identifies the account for the appropriate department, and provides notification to the designated collection employee that correspondence from an account has been received. The account history notes and status are updated based upon the type of document received. The appropriate account history fields are specifically updated when the

communication indicates any of the following: a consumer is represented by an attorney, a request for verification of a debt, a dispute of the debt, a request to cease communications, a claim of identity theft, a claim of hardship, notice that the consumer is incarcerated, a claim of disability, or a notice that the consumer filed for bankruptcy. Doc. 18, at 3–4.

If correspondence received by Weltman indicates that a consumer claims Weltman is violating any regulation or that a consumer is filing a formal complaint, Weltman's personnel that work on processing disputes are notified of that correspondence. Weltman scans paper documents into electronic document files and saves those electronic documents with an appropriate code in Weltman's document management system for the account that relates to the scanned documents. All written communications received by Weltman are scanned before the correspondence is processed by the OPS department. The OPS department employees ensure the documents are scanned properly and completely prior to saving the file to the document management system and disposing of any hard copies pursuant to Weltman's Record Retention and Destruction Policy. Weltman maintains a Clean Desk Policy which applies to all Weltman employees. Pursuant to the Clean Desk Policy Weltman's Management Team Members are required to ensure all fax machines located in their department are cleared of documents and any documents relating to a consumer account are forwarded to the appropriate departments for processing. Management Team Members conduct routine audits to ensure the Clean Desk Policy is being followed. *Id*. at 4.

Had Weltman received a written communication from Plaintiff requesting verification of the debt, Weltman would have followed its policies and procedures regarding processing and handling disputes and verification requests. Weltman maintains a Consumer Dispute and Verification Policy as part of its standard operating procedures which applies to all Weltman

employees. If Weltman receives a consumer dispute or request for verification, it is its policy to cease collection of the debt until Weltman obtains verification of the debt or any copy of a judgment, or the name and address of the original creditor. A copy of the verification or judgment, or name and address of the original creditor is mailed to the consumer. The verification may include, but is not limited to, all available statements or other account documents, including a copy of the judgment if obtained, in order to verify the creditor, amount due and the liable party on the account. Weltman reviews and addresses all consumer disputes received through all communication channels available to a consumer such as mail, telephone, and fax. Weltman will process and respond to a consumer dispute as necessary during the agency collection, pending litigation, or post judgment phases. *Id*. at 4–5.

If a dispute is made during pending litigation, that dispute is given to the attorney handling the file for further processing based upon the attorney's assessment of the case and the litigation proceedings. If and when Weltman receives any documentation from a consumer regarding a dispute, Weltman employees must take the following steps: (1) Identify the Weltman file number/account to update the account history notes that documentation from a consumer has been received; (2) Verify that the documentation supports the dispute [if an employee is unable to determine whether a communication relates to a dispute, the employee must seek supervisor or manager assistance immediately]; (3) Update Weltman's system status code to reflect the dispute; (4) Update all phone numbers on the account to reflect a cease to all calls; and (5) Label the written documentation with the Weltman file number, ensure the documentation is scanned to the file, and provide the physical paperwork to the Collections Clerical Support ("CCS") team for further handling. Once an account is placed in a dispute status, Weltman's CCS team reviews the supporting documentation and works with the Client Media Department to address and

9

document the dispute. Once an account is placed into a dispute status on Weltman's system, it will remain in the dispute status while the dispute is investigated. This has the effect of placing the account in a temporary cease status to prevent any further collection or legal efforts until verification has been provided to the consumer. *Id*. at 5–6.

The Client Media Department will work with Weltman's client to obtain necessary information documentation about the debt for verification. If Weltman doesn't receive any documentation from a consumer about a dispute, it will handle the communication as a request for verification. If Weltman already possesses the necessary documentation about the debt, the documentation verifying the debt is mailed to the consumer or the consumer's authorized representative. Weltman will update the account history notes to include the date the letter with the verifying documentation was mailed to the consumer along with a description of the supporting documentation. If Weltman doesn't have verification documentation in its possession, the CCS team will task the Client Media Department to place a request for documents to the creditor client and change the account status for a follow up discussion with Weltman's client. *Id*. at 6.

If Weltman is unable to obtain verification documentation from the creditor client, the CCS team may close the account and send the consumer a letter advising them that documentation is unavailable and that the account is being returned to the creditor client. Weltman utilizes a status coding process to identify all accounts in which a dispute or verification request has been received. This status coding ensures systematic blocks are in place to prevent further collection and/or legal efforts until the dispute or verification request has been resolved in accordance with the FDCPA. Weltman performs annual and quarterly reviews of its dispute handling procedure and process to ensure the system codes are properly working. In

addition, the client audit team receives a weekly report that includes a list of all accounts moved out of a verification, dispute or fraud status to another "non-disputed status" code. This report shows all accounts that were in one of these protected statuses and then moved to another status because the verification/dispute/fraud issue has been resolved for a variety of reasons. Weltman reviews and audits this report every week for compliance and quality control issues. If Weltman would have received a request for verification from Plaintiff, it would have followed its policies and procedures for handling consumer disputes and verification requests which would have prevented the filing of the collection lawsuit until after verification was sent to Plaintiff. All Weltman attorneys and employees are trained on relevant Weltman's standard operating procedures for the Fair Debt Collection Practices Act (aka FDCPA Training) during the onboarding process when hired. Weltman's FDCPA training includes in-person training and online training for the role the person is to fulfill within Weltman's operations. *Id*. at 7.

Weltman employees and attorneys are periodically trained on manuals, policies and procedures throughout the entire duration of employment, relevant to their positions. Not only are employees and attorneys trained, but all standard operating procedures are readily available for employees to access from company records. Weltman's Consumer Dispute and Verification Policy is a policy that all Weltman employees and attorneys are required to be trained on. *Id*. at 8.

Plaintiff disputes each of the above statements for essentially the same reason: Defendant does not actually perform or follow any of its procedures because if it had, it would have processed and responded to Plaintiff's fax requesting verification of the debt. Doc. 21, at 6–14. Plaintiff goes on to argue that summary judgment in favor of Defendant is inappropriate because "whether Weltman's conduct was intentional rests on whether it received the dispute and request for verification, which is a heavily contested factual issue in this case." *Id*. at 20. Plaintiff's

11

argument rests on conflating receipt of the fax by Weltman's fax machine with knowledge by Weltman that Plaintiff sent it the fax. If that were the case, the bona fide error defense would be meaningless. There is no evidence in the record whatsoever to indicate that Weltman was actually aware that it had received the fax. *See Irvin v. Nationwide Credit and Collection, Inc.*, 2019 WL 4450503 (N.D. Ill. 2019) ("Although challenging the admissibility of the fax confirmations, defendant correctly argues that they at most demonstrate that the fax transmissions were completed, but not that the defendants were aware of the receipt. The court agrees with defendant and concludes that plaintiffs have no evidence that defendant was aware the debts were disputed and thus, had no duty to so communicate with the credit reporting agencies.").

Moreover, even if a Weltman employee was aware of the fax, there is likewise no evidence to suggest that the failure to properly document the communication was anything other than an unintentional clerical or factual error. *Irvin*, 2019 WL 4450503 at *3 (the bona fide error defense applies to errors like clerical or factual mistakes). Here, Defendant has produced voluminous evidence, including its internal operating procedures and an affidavit from Weltman's managing partner of the Chicago office, supporting its claim that it has and follows strict procedures for handling communications from consumers. Doc. 18-1. Moreover, Defendant has shown that it's fax service provider, AT&T, has no record of Weltman receiving a fax from Plaintiff. In response, Plaintiff relies only on her fax log. This is insufficient to create a dispute of fact as to whether Defendant alleged error was unintentional or bona fide.

Finally, even if Weltman received the fax, Defendant has established that it maintains reasonable procedures adapted to avoid errors. *See Abdollahzadeh v. Mandarich Law Grp., LLP*, 922 F.3d 810, 818 (7th Cir. 2019) ("These procedures didn't catch the mistake here, but §

1692k(c) does not require debt collectors to take every conceivable precaution to avoid errors; rather, it only requires reasonable precaution.) (internal quotations omitted); *Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337, 349–50 (7th Cir. 2018). Again, Plaintiff fails to rebut this element of the affirmative defense with any evidence of its own. Because Plaintiff has failed to establish a dispute of material fact with respect to the bona fide error affirmative defense, the Court grants summary judgment in favor of Defendant.

## CONCLUSION

For the reasons set forth above, Defendant's Motion (Doc. 18) for Summary Judgment is GRANTED.

The Clerk is directed to close the case.

Signed on this 9th day of January, 2020.

s/ James E. Shadid
James E. Shadid
United States District Judge
